UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PAVEMENT TECHNOLOGY, INC. | ) | |
| 24144 Detroit Road | ) | |
| Westlake, OH 44145, | ) | CASE NO. |
| | ) | |
| Plaintiff, | ) | JUDGE |
| | ) | |
| v. | ) | |
| | ) | |
| BIOBASED SPRAY SYSTEMS, LLC | ) | COMPLAINT |
| c/o Michael J. Freisthler | ) | |
| 1608 Westlake Dr. | ) | |
| Sidney, OH 45365, | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |

For its Complaint against Defendant Biobased Spray Systems, LLC ("BSS"), Plaintiff

Pavement Technology, Inc. ("Pavetech") alleges as follows:

Parties

1.     Pavetech is an Ohio corporation with its principal place of business in Westlake,

Ohio.  Pavetech is in the business of, among other things, selling and applying an asphalt

rejuvenator to roads and parking lots.  Pavetech sells an asphalt rejuvenator known as

Reclamite® and an asphalt joint stabilizer known as Jointbond®.

2.     BSS is an Ohio limited liability company with its principal place of business in

Sidney, Ohio.  BSS is in the business, of among other things, marketing and selling a product

known as Biorestor.  BSS markets and sells Biorestor as both an asphalt rejuvenator and an

asphalt joint stabilizer.  BSS markets and sells Biorestor in direct competition with Pavetech's Reclamite® and Jointbond® products.

<u>Background of Asphalt Rejuvenators</u>

3.      About 360 Million tons of asphalt paving are used annually in the United States to pave roads, parking lots, runways, walkways and other surfaces.  Asphalt pavement is comprised of sand and stone (aggregate) held together with asphalt cement (also known as the asphalt binder).  Asphalt cement comes from the "bottom of the barrel" -- it is the product that remains after the naphtha, gasoline, kerosene and other fractions are removed from the crude oil.  Asphalt cement is comprised of asphaltenes and maltenes.

4.      Certain of the maltenes react with oxygen at ambient temperatures and degrade when exposed to air, UV radiation, water, and high pavement temperatures.  As the maltenes continue to oxidize over time, the asphalt cement becomes brittle.  Resulting changes in the asphalt concrete mixture lead to cracking and raveling.  The following is a photograph of asphalt that has begun to deteriorate as a result of the degradation of the maltenes in the asphalt cement:



5.      Reclamite® is an asphalt rejuvenator that has been on the market for more than 50 years.  Reclamite® is a petroleum based product.  When applied to an asphalt pavement, Reclamite® penetrates into the asphalt and replaces the maltene oils that have oxidized. The Federal Highway Administration, U.S. Department of Transportation and state Departments of

Transportation have evaluated Reclamite® and concluded that its maltene oils successfully rejuvenate weathered materials in a manner that slows pavement deterioration.  Reclamite® works by replacing the oxidized maltene molecules, thereby restoring the balance between the asphaltenes and the maltenes in the asphalt binder.

6.     The Air Force Weapons Laboratory sponsored a study, dated May 1970, entitled "Rejuvenation of Asphalt Pavement" which consisted of a laboratory investigation of five products, including Reclamite®.  The conclusion of this study revealed that application of Reclamite® improved the viscosity of the asphalt binder and substantially reduced the loss of aggregate.

7.     The Naval Facilities Engineering Command sponsored a 1970 study of Reclamite® led by the Naval Civil Engineering Laboratory at Port Hueneme, California.  The study examined the field use of Reclamite® by multiple governmental agencies, including several Federal users, the California State Division of Highways and several city and county governments.  The study concluded that Reclamite® had a beneficial effect when applied to asphalt.

8.     In a publication known as "Value Engineering" (August 1973), the U.S. Navy reported the results of its evaluation of Reclamite®.  That study involved the application of Reclamite® on three roads at the Naval Weapons Center, China Lake, California.  At periodic intervals, photographs, and core samples for asphalt penetration measurements were taken to assess the effectiveness of the product.  The test covered a period of almost two years.  The field tests and laboratory reports "show conclusively that Reclamite® does prolong the life of asphalt concrete pavements."

- 3 -

9.      A study sponsored by the Air Force Civil Engineering Center and conducted by the U.S. Army Corps of Engineers, Waterways Experiment Station, Vicksburg, Mississippi, in February 1976, involved treating adjacent pavement areas at three Air Force bases with four proprietary rejuvenator products, including Reclamite®.  The tests were conducted at a base in the dry, hot southwestern part of the United States, a base in the humid, hot southeastern part of the country, and a third base located in the cold north-central part of the country.  The study covered a period of four years and concluded that Reclamite® effectively rejuvenated the old asphalt binder.

10.     The Geotechnical Laboratory of the U.S. Army Engineer Waterways Experiment Station in Vicksburg, Mississippi (March 1973) evaluated the use of Reclamite® at the Lajes Airfield in the Azores.  Payment was contingent on the asphalt pavement meeting certain performance specifications following the application of Reclamite®.  The test results demonstrated that the Reclamite® rejuvenated asphalt significantly exceeded the performance specifications.

11.     The City of Orlando, Florida (1997) commissioned a study by Ardaman & Associates, Inc., a Goetechnical, Environmental and Materials consulting firm, to evaluate the use of Reclamite® on roads in Orlando.  Among its conclusions, the study found that application of Reclamite® "imparts favorable properties to neat asphalt binders."

12.     Hillsborough County, Florida (2004) conducted a study of Reclamite® and concluded that it improved the performance of the binders in the asphalt pavement to which it had been applied.

Background of Longitudinal Joint Stabilizers

13.     Due to equipment and traffic flow limitations, most asphalt roadways must be paved one lane at a time.  Hence, the first lane cools before the second lane is placed.  Because the edge of the first lane is unconfined, it cannot be compacted to the same density as the rest of the mat.  When the second lane is paved, the hot asphalt may not properly bond to the now cooled asphalt in the first lane.

14.     This "longitudinal joint" between the two lanes will have a lower mixture density as compared to the rest of the roadway, and will thus be more permeable to intrusion of oxygen and moisture.  This area is typically the first point of failure in the pavement.

15.     The following is a picture of the type of damage that can occur because of the lower density in the joint between two lanes of an asphalt roadway:



16.     Premature joint deterioration reduces the pavement life-cycle and has been identified as the most serious problem for the majority of asphalt roadways by the U.S. Federal Highway Administration.

17.     One of the owners of Pavetech, Colin Durante, and a business associate, Delbert Dawson, developed a polymerized maltene emulsion that was formulated to penetrate the longitudinal joint area quickly and fortify this weak area in new asphalt construction.  They named their product Jointbond®.

- 5 -

18.     Jointbond® is a maltene based cationic emulsion with polymer that penetrates into the pavement and rejuvenates the asphalt binder by replenishing the maltene oils that have been oxidized during the heating process when the asphalt is being mixed and applied. In addition, Jointbond® contains a polymer which, along with the maltenes, helps to provide an in-depth seal.

19.     Jointbond® is covered by United States Letters Patent 7,927,038 entitled Method of Sealing Joints in Road Surfaces and Subsurfaces and United States Letters Patent 8,172,479 entitled Composition for Sealing Joints in Road Surfaces and Subsurfaces to protect their method and product.

<u>Biorestor</u>

20.     In contrast to Reclamite® and Jointbond®, Biorestor is not petroleum-based.  It is a combination of D-Limonene (75%), methyl ester of soybean oil (*i.e.*, a biodiesel) (20%) and a styrene-butadiene copolymer (a synthetic rubber compound) (5%).  *See* Exhibit A which is a copy of the Safety Data Sheet for Biorestor.

21.     Attached as Exhibit B is a Material Data Safety Data Sheet issued by the Florida Chemical Co., Inc. for D-Limonene.  According to that document, D-Limonene is a "bio-degradable solvent." It can be "used in its pure form, blended with other solvents, or easily emulsified to make water soluble cleaning products."  It can be used to formulate, among other things, an engine degreaser, a tar cleaner, an asphalt release agent and a sewage treatment solvent.  D-Limonene is a terpene.

22.     Methyl ester of soybean oil is also used as an industrial solvent.  *See, e.g., http://www.silverfernchemical.com/products/soy-methyl-ester/* ("Soy Methyl Ester provides effective solvency, is low in volatile organic compounds, has a high flashpoint, is nontoxic, and

is compatible with other organic solvents and most metals, plastics, and elastomers.  . . . It is an efficient solvent for industries such as printing, chemical formulating, and adhesives.")

23.  Biorestor, therefore, is a combination of two industrial solvents with a modest amount of synthetic rubber added to it.  Terpenes and methyl soy esters are bio-derived molecules.  Such chemical functionalities are never found in conventional asphalt, and therefore they cannot be described as maltenes.  When applied to an asphalt pavement, Biorestor does not replace or restore the maltenes lost through oxidation.  Instead, it softens and dilutes the remaining maltenes and asphaltenese in the pavement.

<u>Defendant's False and Misleading Advertising</u>

24.  Attached as Exhibit C is an advertising brochure published by BSS.  BSS has made this brochure available to potential customers in the Northern District of Ohio, such as the Ohio Turnpike and Infrastructure Commission located in Berea, Ohio.

25.  On the first page of Exhibit C, BSS has prominently displayed the statement that Biorestor is a "MALTENE Rejuvenator."  This statement is literally false.  Biorestor contains no maltenes and, therefore, cannot replace the maltenes in asphalt cement.

26.  On the second page of Exhibit C, BSS states that Biorestor is "made from 100% agricultural oils" and that it "penetrates into the asphalt pavement to reverse . . . oxidation . . . ."  Both of these statements are literally false.  First, as demonstrated by Exhibit A, Biorestor contains 5% of a styrene-butadiene copolymer, which is not an agricultural oil.  Secondly Biorestor contains no maltenes nor chemical reducing agents.  Biorestor cannot "reverse" the chemistry of oxidation, nor does it replace the maltene molecules that have been oxidized.  Biorestor can only dilute and soften the existing maltene phase using bio-derived molecules with chemical functionalities that are totally different from those found in asphalt maltenes.

27.     Attached as Exhibit D is a page from BSS's website.  On it, BSS states that Biorestor is a "biobased maltene rejuvenator that can reverse years of oxidation from your pavement."  This statement is literally false.  Maltenes are defined as petroleum derivatives – they cannot be "biobased."  And again, Biorestor does not reverse oxidation.

28.     Exhibit D states that Biorestor can be used to replace "components, resins and oils that are lost during manufacturing."  This statement is literally false.  The components, resins and oils that are lost during the process of manufacturing asphalt pavement are all petroleum based. Maltenes cannot be replaced by a polar industrial bio-solvent to which a small amount of styrene-butadiene copolymer has been added (a copolymer that does not naturally exist in asphalt binder).   Maltene oil replaces molecules that have been oxidized with the same molecules.  Bio-oils cannot do this.  The chemical composition between maltene oils and bio-oils is so different that they cannot be specified or used in the same material specification.

29.     Exhibit D states that Biorestor can be used to "replace oils and resins on older pavements that are lost through natural aging process of moisture and UV damage."  This statement is literally false.  The oils and resins in older pavements that are lost through natural aging process of moisture and UV damage are all petroleum based.  They cannot be replaced by a product that is not petroleum based and does not remotely mimic the chemical basis for product performance.

30.     Attached as Exhibit E is a "Biorestor White Paper" that can be found on the "Pavement Management" tab of BSS's webpage.  On page 2 of that White Paper, BSS states that it "has developed an asphalt rejuvenator/sealer, called Biorestor®" and that this "patented formulation has been proven to extend the lifespan of asphalt."  Nowhere in the White Paper,

however, or on any of BSS's marketing materials, or on the containers of Biorestor, does BSS include a patent number as required by 35 U.S.C. § 287(a).

31.     BSS's owner, Michael Freisthler, is listed as the inventor on United States Letters Patent 6,749,677 entitled Asphalt Sealer Composition.  Each claim of that patent, however, requires a composition that includes at least 20% virgin soybean oil.  As shown on the Biorestor SDS (Exhibit A), however, Biorestor contains no virgin soybean oil.  Virgin soybean oil contains primarily tri-glyceride molecules.  Methyl soy esters have to be manufactured by replacing the glycerol with methyl ester linkages.  These two versions of soy products are not equivalent.

32.     BSS's claim that the Biorestor contains a "patented formulation" is a false statement of fact, made with the intent to deceive the public.

33.     On page 2 of the White Paper, BSS acknowledges that, contrary to the statements on the second page of Exhibit C, where BSS states that Biorestor is "made from 100% agricultural oils," Biorestor "is made of 95% bio-based content and 5% SBS polymer."

34.     On page 3 of the White Paper, BSS acknowledges that Biorestor is "petroleum free."  Because maltenes are petroleum derivatives, Biorestor cannot contain any maltenes.

35.     Attached as Exhibit F is a BSS advertisement from the Spring 2018 edition of the Pavement Preservation Journal.  In that advertisement, BSS describes its Biorestor Asphalt Rejuvenator and its Biorestor Construction Joint Stabilizer as a "Maltene based rejuvenator." For the reasons explained above, this statement is literally false.  BSS has run similar advertisements in other issues of the Pavement Preservation Journal.

36.     In 2008 and 2009, the Pennsylvania Department of Transportation conducted a study of a product called RePlay.  The RePlay product is a bio-based rejuvenation product. However, the manufacturer of RePlay does not advertise its product as a maltene rejuvenator, nor

does it sell into DOT agency specifications specifically requiring maltene oil rejuvenators as would be defined by ASTM D-2006.  For the PDOT study, the RePlay was applied by Asphalt Systems, Inc, of Sidney, Ohio – an affiliate of BSS ("Asphalt Systems").  After conclusion of the 18 month study, the PDOT stated that "no tangible benefits were found with the use of RePlay."

37.     BSS has been marketing and selling Biorestor in competition with Pavetech's Reclamite® and Jointbond® products, including an effort to sell Biorestor to the Ohio Turnpike and Infrastructure Commission located in Berea, Ohio and to the City of Westlake, Ohio. Customers in the Northern District of Ohio also have ready access to all of these false and misleading statements because most, if not all, of the false and misleading statements are available on BSS's website, which is accessible by customers located in the Northern District of Ohio.

38.     On February 15, 2018, the Fayette County, Georgia Purchasing Department issued a Request for Quotation, #1461-A, for qualified contractors to provide and apply asphalt rejuvenating products to certain county roads in accordance with the specifications outlined in that RFQ.  Under the heading "ACCEPTABLE MATERIAL," the RFQ stated:

> RECLAMITE®, manufactured by Golden Bear Oil Specialties, is a product of known quality and accepted performance. Contractor may use another product that has been proven to be functionally equivalent. The onus of this proof is on the Contractor; the County's decision in this regard is final.

39.     Both Pavetech and Asphalt Systems submitted quotations in response to the Fayette County RFQ.  Asphalt Systems submitted its response to the RFQ on February 19, 2018.

40.     Included with the Asphalt Systems Quotation was a statement from BSS certifying that Biorestor met all of the specifications set forth in the RFQ.  This certification is false.  Biorestor does not meet the specifications outlined in the Fayette County RFQ.  For example, the RFQ calls for a product with a flash point of 196 ℃ (385 ℉).  The Biorestor Safety

- 10 -

Data Sheet, however, indicates that Biorestor has a flashpoint of 46 °C (115 °F) – well below the RFQ specifications.

41.     The response to the Fayette County RFQ contains numerous other false or misleading statements by BSS.  BSS made these statements with the intent to mislead Fayette County into believing that its Biorestor product met the same specifications as Reclamite® when, in fact, it does not.

42.     As a result of BSS's false and misleading statements as outlined above, customers have been deceived as to the properties of the Biorestor product.  Customers have been deceived into believing that the Biorestor product will "rejuvenate" asphalt, that it will restore original asphalt properties, that it will reverse the effects of oxidation, that it will replace the original oils and resins in older pavements that are lost through natural aging process of moisture and UV damage, that it will indefinitely extend pavement life, that it is patented and that it will restore asphalt to its original condition.  These statements are either literally false, or misleading.

43.     As a result of BSS's false and misleading statements, BSS has bypassed the normal product review process that departments of transportation and other organizations have in place to approve new products for use in paving.  Instead, BSS and its affiliates have submitted bids for maltene oil products that have already received formal approval after years of testing and performance evaluations with the false claim that Biorestor is functionally equivalent to Reclamite®.

44.     Customers have been deceived by BSS's false and misleading statements and have purchased BSS's products in lieu of purchases from Pavetech in reliance on these and other false and misleading statements.  The false statements in BSS's advertising have had a material effect on customers' purchasing decisions.

- 11 -

Jurisdiction and Venue

45.     Because BSS is an Ohio limited liability company, it is subject to personal jurisdiction in the Northern District of Ohio.

46.     BSS's activities in the Northern District of Ohio such as its contacts with the Ohio Turnpike and Infrastructure Commission located in Berea, Ohio, would be sufficient to subject it to personal jurisdiction in the Northern District if that district were a separate State.  For that reason, venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1).

47.     Venue in this District is also proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims alleged in this Complaint occurred in the Northern District of Ohio.

48.     The Court has subject matter jurisdiction over this action under 15 U.S.C. § 1121 and 28 U.S.C. § 1331 and 1338(b) because this action arises under the Federal Trademark Act of 1946, as amended, 15 U.S.C. § 1051 *et seq.*  The Court has supplemental jurisdiction over Pavetech's state law claims under 28 U.S.C. § 1367.

COUNT I

49.     Pavetech incorporates by reference the allegations of paragraphs 1 through 48 of the Complaint.

50.     BSS has made false or misleading statements of fact in commercial advertisements and promotions that deceive or are likely to deceive in a material way.  Those false or misleading statements have been made to customers in Ohio as well as customers in other States, such as the Tennessee Department of Transportation and Fayette County, Georgia.  BSS's false or misleading statements have or are likely to cause competitive or commercial injury to Pavetech.  As a result, BSS has violated 15 U.S.C. § 1125(a).

51.     Pavetech has been damaged as a result of BSS's violation of 15 U.S.C. § 1125(a) in an amount not presently known but believed to exceed $25,000.  Those damages include, but are not limited to, the expenses that Pavetech has incurred to combat BSS's false advertising, as well as the profits lost when Pavetech has either lost business to BSS or has had to reduce its price to compete with BSS's false advertising.

52.     Pavetech will be irreparably harmed unless BSS is enjoined from further violations of 15 U.S.C. § 1125(a).

<u>COUNT II</u>

53.     Pavetech incorporates by reference paragraphs 1 through 52 of this Complaint.

54.     BSS has improperly claimed that Biorestor is covered by a United States Patent.

55.     BSS has made this false claim about Biorestor being patented in an effort to persuade customers to purchase Biorestor instead of Reclamite® or Jointbond®.

56.     Customers have purchased Biorestor instead of Reclamite® or Jointbond®. Customers were influenced in their purchasing decisions as a result of BSS's claim that its products were covered by a United States Patent.

57.     In an effort to combat BSS's unfair competition, Pavetech has lowered the price it has charged for its products, thereby lowering its profits.

58.     Pavetech has suffered a competitive injury as a result of BSS's false claim of patent protection in that it has suffered an economic loss, including lost or diminished profits.

59.     Pavetech has been damaged as a result of BSS's false patent marking in an amount not presently known but believed to exceed $25,000.

<u>COUNT III</u>

60.     Pavetech incorporates by reference paragraphs 1 through 59 of this Complaint.

61.     As outlined above, BSS has made representations that Biorestor has ingredients, characteristics, uses and benefits that Biorestor does not have.  As a result of this conduct, BSS has violated the Ohio Deceptive Trade Practices Act, R.C. § 4165.01, *et. seq*.

62.     Pavetech has been damaged as a result of BSS's violation of the Deceptive Trade Practices Act in an amount not presently known but believed to exceed $25,000.

63.     Pavetech will be irreparably harmed unless BSS is enjoined from further violations of the Deceptive Trade Practices Act.

WHEREFORE, Pavetech prays for relief as follows:

A.     For judgment in its favor and against BSS in the amount of Pavetech's actual damages as shown at trial;

B.     For preliminary and permanent injunctive relief to prevent BSS from making false or misleading statements about its products and claiming that those products are the functional equivalent of Reclamite® or Jointbond®;

C.     For an injunction requiring BSS to issue corrective notices and advertising to remedy the effects of its prior false advertising;

D.     For judgment in its favor and against BSS for punitive damages;

E.     For judgment in its favor and against BSS for exemplary damages;

F.     For an award in its favor for its attorneys' fees and other litigation costs; and,

- 14 -

G.      For such other and further relief as this Court deems just.


                                        /s/ James B. Niehaus
                                        James B. Niehaus, Esq.      (0020128)
                                        Gregory R. Farkas, Esq.     (0069109)
                                        FRANTZ WARD LLP
                                        200 Public Square, Suite 3000
                                        Cleveland, Ohio  44114
                                        216-515-1660 – Telephone
                                        216-515-1650 – Facsimile
                                        jniehaus@frantzward.com
                                        gfarkas@frantzward.com

                                        Attorneys for Plaintiff
                                        Pavement Technology, Inc.

<u>Jury Demand</u>

Plaintiff demands a trial by jury.

/s/ James B. Niehaus
James B. Niehaus, Esq.　　　(0020128)
Attorney for Plaintiff